**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Richard Allen Smuda and Linda Smuda, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Lynn Marten, Social Security, Assistant ) | |
| Regional Commissioner, Processing Center ) | |
| Operation, ) | |
| ) | Case No. 1:14-cv-141 |
| Defendant. ) | |

Plaintiffs initiated the above-entitled action with the submission of, amongst other things, an application to proceed *in forma pauperis* and proposed complaint. They subsequently filed a "Request to Get Information from Social Security." This matter is now before the undersigned for initial review.[1]

## I. BACKGROUND

Smuda is an inmate confined at the North Dakota State Penitentiary. He and his mother, Linda, initiated the above-entitled action against the Social Security Administration ("SSA") on November 4, 2014, with the submission of a proposed complaint, an application to proceed *in forma pauperis,* and supplemental materials, including: a supporting "affidavit" signed by Smuda's mother, correspondence from the SSA to Smuda and his mother, and a copy of an SSA Appeals Council decision dated April 15, 2011.

---

[1] Plaintiffs have consented to the undersigned's exercise of jurisdiction over this matter. (Docket Nos. 6 and 11).

1

### A. Supplemental Materials

#### 1. Appeals Council Decision

The Appeals Council issued a decision in Smuda's favor on April 15, 2011. From its decision the court is able to glean the following. Smuda was imprisoned at the North Dakota State Penitentiary ("NDSP") from June 11, 2001, until April 23, 2004, following a conviction in state district court on stolen property and assault charges. (Docket No. 2-2).[2] Thereafter, he was civilly committed on the grounds that he was a sexually dangerous person as defined by state statute. (Docket No. 2-2). In 2007, the Commissioner determined that Smuda was no longer eligible for benefits beginning June 2001 on account of his imprisonment and subsequent court-ordered commitment and that he had received an overpayment of benefits. (Id.). He denied Smuda's request for reconsideration. (Id.). His decision was affirmed by an administrative law judge. (Id.). However, upon further review, the Appeals Council concluded the Commissioner had erred to the extent that Smuda was in fact eligible to receive benefits in May 2004, the month after his term of imprisonment had ended. (Id.). Consequently, it directed that Smuda's benefits be reinstated effective May 2004, that his overpayment be recalculated, that his past due benefits be used to offset/satisfy the overpayment, and any remainder be released to him. (Id.). However, as a caveat, it added that the SSA should consider whether Smuda's benefits should be suspended effective April 2011 given information provided by the NDSP's records department that Smuda had "returned to [the NDSP] on April 1, 2011, for conviction on a charge of simple assault and will remain there for that offense until June 29, 2015." (Id.).

---

[2] According to records obtained from the NDSP by the Appeals Council, Smuda was previously incarcerated at the NDSP "for the crime of gross sexual imposition but completed his sentence on that conviction on August 27, 1998." (Docket No. 2-2).

### 2. Linda Smuda's supporting "Affidavit"

Linda stated the following in the affidavit filed in support of Smuda's complaint:

> In the matter of Ricky Allen Smuda; I have been his Social Security Payee since he was 8 years old, when his father past away in 1974! Then in 1983 when Ricky was 18 he became Mentally Ill. I then continued to receive benefits from his father's Social Security for Ricky's care and only Parent! Then in 2006 the Social Security Office in Jamestown North Dakota cut me off from being Ricky's Payee. Then they had Progress Enterprise be his Payee for one month, while the Doctors signed papers for Ricky to be the Payee of his own benefits, while in the State Hospital in 7/05/2006! Within a year they cut him off of his benefits and billed him an overpayments of $69,102.00 and then it was $66,643.00 and then $67,102.00. However it was my responsibility as his Payee at the time of the overpayments. So I filed Bankruptcy in February 24, 2011. James Sandsmarck out of Fargo North Dakota was the Attorney and we had a hearing in Fergus Falls Minnesota and the Case Number 11-60174 was assigned to Judge Dennis D. O'Brien. When the hearing was held everyone knew including the Social Security Office in Fergus Falls Minnesota Representative Rick Elles the Field Office Manager. That this Case was for the overpayments in his father Raymond Eugene Smuda Social Security Security file for the care of Ricky Smuda Claiming his fathers Social Security No . . . . because he does not have funds in his own file No. . . . . I Linda Smuda also told the Courts my Social Security No. Upon information and belief the full amount of the overpayments of the $67,102.00 n June 1, 2011 is not in the correct Social Security File Claim Number . . . . I sent letters with no response.

(Docket No. 2-1) (errors in original).

### 3. SSA's correspondence with Smuda's mother

As noted above, correspondence from the SSA to Smuda's mother was submitted for the court's review. One of these letters, dated December 29, 2009, provided in relevant part the following:

> Below is the new repayment withholding schedule we will use to collect the overpayment of Social Security benefits paid to you.
>
> | Months(s) | Amount you will receive | Amount withheld | Balance you owe |
> |---|---|---|---|
> | 01/10 | $ 0.00 | $ 459.00 | $66,643.00 |

| | | | |
|---|---|---|---|
| 03/22 | $371.00 | $ 88.00 | $ 0.00 |
| 4/22 | $459.00 | $ 0.00 | $ 0.00 |

    If you owe Medicare premiums or health plan premiums, they may be deducted from the amount shown under the heading "Amount you will receive."

    **What We Will Pay and When**

    You will receive $371.00 for March 2022 and April 2022.

    After that you will receive your full regular monthly payment.

(Docket No. 2-2). Another of these letters, dated February 18, 2011, stated:

    You recently requested that we waive the collection of your overpayment of $69,102.00. Based on the facts we have now we cannot approve your request. However, you have a right to meet with us before we decide if you have to pay back the overpayment. This meeting is called a personal conference. A person who has not made any decision about your waiver request will meet with you. I am writing to schedule this meeting.

    You also have a right to review your file before the personal conference. I am scheduling a time for this meeting as well.

    Some Important Dates

    We have scheduled a time for you to review your file. This will help you get ready for your conference. You can review the file on March 1, 2011 at 2:00 p.m. in this office. . . .

    We have scheduled your personal conference for March 8, 2011 at 2:00 at this office....

(Docket No. 2-2). A third letter, dated February 28, 2011, advised that the folder review and personal conference scheduled for Smuda's mother in early March had been canceled. (Docket No. 2-2).

### 4. SSA's correspondence with Smuda

Correspondence from the SSA to Smuda was also submitted for the court's review. One letter, dated July 25, 2011 stated in relevant part the following:

> We received a letter from you dated 7/11/11 with questions regarding a prior overpayment. Social Security cannot refund any money that was withheld for a student loan debt. You would need to contact the student loan company.
>
> For the prior SSI overpayment from 1985 or 1986? That was referenced in your letter, we we can repay that money to you. Because your mother filed for bankruptcy we can not stop recovery of the overpayment from the time of bankruptcy filing, we cannot repay prior recovered overpayments.
>
> Based n the reinstatement of your benefits for May 2004 through March 2011, after recovering $67,102.00 overpayment, there is $5694.00 still due you. Once you are released from prison, bring your release papers to your nearest Social Security office and we can release that payment to you.

(Docket No. 2-2, pp. ). Another letter, dated January 10, 2012, advised:

> Our records currently show that you have an appeals council request pending for your overpayment. As of 1/12/12 no decision has been made. Although overpayment recovery can resume while your request is pending at the appeals council, I have asked our payment center to stop sending billing requests to you until a decision has been made.

(Id.).

### B. Proposed Complaint Filed by Smuda and his Mother

In his complaint, Smuda and his mother take issue with, among other things, the SSA's collection of overpayment. Specifically, they allege:

> The Judge on the Appeal Abused his Discrepancy and out of his Jurisdiction when he granted Social Security permission to take the overpayments out of Mr. Smuda's benefits two weeks before the bankruptcy was granted. In 2011 the Judge was well aware of the filling of the bankruptcy from Linda Smuda and the Judge violated the Bankruptcy code. That was two different cases and should have been treated separately.
>
> Social Security can argue that they already payed Mr. Smuda from 2004 till 2006 and

5

will not pay that amount again however then the overpayments should have been around $35,000.00 they over lapped. But it was granted both cases.

* * *

The original Administrative Judge said in 2009. "That this case only Pertains to weather or not that Smuda can have his Benefits in the Hospital This case does not include the overpayments".

However in 2011. The office of Disability Adjudication and Review. Gave Social Security permission to take Smuda's Benefits to pay back the overpayments and they did two weeks before the bankruptcy was granted.

Smuda filled an appeal on the 2011 case with the help of Bismarck N.D. Social Security office Representative Mary.

* * *

I want this court to grant Mr. Smuda the full amount of his Benefits from 2004 till 2011, $72,964.00 not including the overpayments. Plus interest and Taxes Total $80,0000.00 this also includes $1200,00 for filling the Bankruptcy.

I would also like this court to have Social Security redo Mr. Smuda's Tax return, from 2004 till 2011. Plus filing fees of $400.000.

(Docket No. 2).

## II. STANDARDS OF REVIEW

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burden imposed by prisoner suits that are too often frivolous and without merit. Jones v. Bock, 549 U.S. 199, 203-04 (2007); Woodford v. Ngo, 548 U.S. 81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee requires courts to conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A.[3] In conducting the screening, the court is required to identify any cognizable

---

[3] With respect to complaints filed by non-prisoners endeavoring to proceed without prepayment of fees, section 1915(e)(2) provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against

6

claims and to dismiss the complaint, or any part of it that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

**III.    DISCUSSION**

From the materials submitted to date, the undersigned cannot discern exactly what type of benefits Smuda was receiving at the time overpayments were made, whether Smuda's mother received overpayments separate and apart from those Smuda may have received, whether Smuda's mother wants to appeal an SSA determination regarding overpayment on her own behalf or on Smuda's behalf, whether Smuda wants to appeal the decision issued by the Appeals Council in his favor on April 15, 2011, or whether it is Smuda's intent to appeal from a subsequent Appeals Council decision.[4]

Further complicating matters are: (1) allegations made by Smuda and his mother about abuses of discretion and violations of the bankruptcy code by the "Judge on the Appeal;" and (2) demands for reimbursement of costs incurred by Smuda's mother in her bankruptcy proceeding the SSA's assistance in "redoing" Smuda's tax returns for the years 2004 through 2011. Is the judge to which they refer the administrative law judge referenced in the Appeals Council's April 11, 2011, decision, the Appeals Council itself, or the bankruptcy judge who presided over the bankruptcy proceedings initiated by Smuda's mother in 2011?

If, in the end, Smuda and his mother are simply claiming that the SSA did not properly recalculate any overpayments in accordance with the Appeals Council's April 15, 2011 decision and

---

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)

[4] As noted above, supplemental materials submitted by Smuda, specifically, correspondence from the SSA, makes reference to a matter pending before the Appeals Council in January 2012. However, nothing in the pleadings provide any insight as to the substance of this matter or when, if any decision, was issued by the Appeals Council.

7

wrongly withheld underpayments to which Smuda was entitled, there is nothing in their submissions to even remotely suggest that they have exhausted their administrative remedies, a prerequisite for commencing an action for judicial review of an SSA decision. See 42 U.S.C. § 405(g) (providing that a civil action may be commenced within sixty days of a final administrative decision).[5]

Insofar as Smuda and his mother may be seeking monetary damages against the SSA in connection with its calculation and collection of overpayment, such a claim is not cognizable. See Schweiker v. Chilicky, 487 U.S. 412, 424 (1988) (explaining that the Social Security Act "explaining that the Social Security Act "makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits"); see also Hines v. Irvington Counseling Center, 933 F.Supp. 382 (D.N.J.1996) (applying Schweiker and holding plaintiff could not sustain a suit for money damages against the Social Security Administration or its employees in their official or individual capacities).

## IV. CONCLUSION

The above-entitled action will be **DISMISSED** without prejudice due to lack of subject to dismissal due jurisdiction and, alternatively, for failure to state a cognizable claim, unless, within forty-five (45) days plaintiffs file an amended proposed complaint that cures the foregoing deficiencies. Smuda's request to proceed *in forma pauperis* (Docket No. 1) and "Request to Get Information from Social Security" (Docket No. 7) will be held in abeyance.

---

[5] The district court's decision in Ritchie v. United States, is instructive. See Case No. CV 07–01–M–DWM, 2007 WL 1661600, at **1-2 (D. Mont. May 31, 2007). There, an inmate filed suit against the SSA and two of its employees, asserting: (1) he successfully prosecuted a claim for benefits and obtained an award of back benefits; and (2) SSA employees thereafter conspired to not pay him the back benefits. Id. The district court dismissed the inmate's complaint on initial review based in part on the inmate's failure to allege "that he has exhausted his administrative remedies with respect to the Commissioner's purported failure to implement a favorable decision, as required before commencing an action for judicial review in federal court. Id. (citing 42 U.S.C. § 405(g)).

**IT IS SO ORDERED.**

Dated this 15th day of December, 2014.

                                          */s/ Charles S. Miller, Jr.*
                                          Charles S. Miller, Jr., Magistrate Judge
                                          United States District Court