## IN THE UNITED STATES DISRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Ricky S., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION** |
| | ) | **FOR REQUESTED RELIEF** |
| v. | ) | |
| | ) | |
| Social Security Administration, | ) | Case No.: 1:14-cv-00141 |
| | ) | |
| Defendant. | ) | |

On January 14, 2025, Plaintiff Ricky S. ("Plaintiff") filed a motion to reopen the above-captioned matter. (Doc No. 33). On January 17, 2025, the court denied Plaintiff's motion finding that "[i]f [Plaintiff] is taking issue with a decision issued by the Commissioner following remand, his appropriate course of action would have been to exhaust his administrative remedies as outlined by the Commissioner in the motion to remand and then appeal the Commissioner's final decision to the court." (Doc. No. 34 at 3-4).

On May 30, 2025, Defendant Commissioner of Social Security ("Commissioner") filed a motion to reopen case and the Certified Administrative Record. (Doc. Nos. 36, 37). The Commissioner contended that Plaintiff had a right to review the 2016 decision on remand without the filing of a separate civil action, and requested the court reopen and reinstate the case so Plaintiff could pursue his argument that a bankruptcy discharge granted to his mother, and representative payee, absolved him of any obligation to reimburse the Social Security Administration for overpayments it had made to him while he was imprisoned. The court granted the motion on June 23, 2025, ordering the parties to submit briefing detailing the overpayment and underpayment, bankruptcy discharge, and any amount Plaintiff may still be owed or owe to the Social Security Administration. (Doc. No. 39).

On July 9, 2025, Plaintiff filed a *Motion for Requested Relief* and supporting brief. (Doc. Nos. 40, 42). On August 21, 2025, the Commissioner filed a response. (Doc. No. 41). This matter is now ripe for the court's review.

I. **BACKGROUND**

Plaintiff was deemed eligible to receive child's insurance benefits under Title II of the Social Security Act upon his father's death since approximately 1974. (Doc. No. 37 at 258). When Plaintiff attained the age of eighteen in 1984, the benefits terminated. (*Id.* at 172). However, Plaintiff was again deemed eligible for child's insurance benefits as a disabled adult child effective in 1985 and has been continuously entitled to benefits since that time. (*Id.*).

Plaintiff has experienced several instances of incarceration or civil commitment throughout his life. Specifically, Plaintiff has either been imprisoned or subject to civil commitment almost continuously since his sexual assault conviction in 1987. (Doc. No. 41 at 2); *see also In the Matter of Commitment of Smuda*, No. A21-0610, 2021 WL 5047496, at *2 (Minn. Ct. App. Nov. 1, 2021). Plaintiff's history includes two convictions for theft of a motor vehicle, two convictions for felony assault on a correctional officer, and convictions relating to possession of stolen property, simple assault, disorderly conduct, felony simple assault, gross sexual imposition, and gross sexual imposition and aggravated assault. (Doc. No. 40 at 6). In 2004, upon completion of his sentences for his stolen property and assault convictions, Plaintiff was civilly committed to the North Dakota State Hospital as a sexually dangerous person. (Doc. No. 37 at 309). Plaintiff was again incarcerated from 2011 through 2015 and then returned to the North Dakota State Hospital. (*See Id.* at 11).

Plaintiff was released from the State hospital following a 2019 decision by the North Dakota Supreme Court to terminate his civil commitment. *Matter of R.A.S.*, 2019 ND 169, ¶ 12,

930 N.W.2d 162, 165. In 2019, Plaintiff was civilly committed as a person with mental illness in Minnesota. *In the Matter of Commitment of Smuda*, No. A21-0610, 2021 WL 5047496, at *3 (Minn. Ct. App. Nov. 1, 2021). In 2020, a Minnesota court issued an order civilly committing Plaintiff as a sexually dangerous person and sexually psychopathic personality. *Id.* at *4. As of August 2025, Plaintiff has remained civilly committed in Minnesota. *Smuda v. Futchko*, No. CV 25-1721 (JRT/JFD), 2025 WL 2205929, at *1 (D. Minn. Aug. 4, 2025).

As relevant here, Plaintiff's mother, Linda S. ("Linda S." or "mother"), filed a Chapter 7 bankruptcy case in Minnesota in February of 2011. (Doc. No. 37 at 152). She was granted discharge under Chapter 7 in June 2011. (*Id.* at 150).

Meanwhile, the Appeals Council reviewed the Administrative Law Judge's ("ALJ") determination that pursuant to the sexually dangerous inmate provisions of 42 U.S.C. § 402(x)(1)(A)(iii), Plaintiff was ineligible for benefits while confined at the North Dakota State Hospital beginning in 2004. (*Id.* at 142). In its April 2011 decision, the Appeals Council determined that the requirements for suspension of benefits under the sexually dangerous person provisions were not met as the court had committed Plaintiff as a sexually dangerous person after he had served sentences for crimes which did not have an element of sexual activity. (*Id.* at 144). Accordingly, the Appeals Council found Plaintiff eligible for payments beginning in May 2004, the first full month after completing his sentences for convictions of possession of stolen property and assault. (*Id.* at 145). The Appeals Council further provided that Plaintiff's overpayment was to be recalculated, any past-due benefits released after applying any underpayment due to his overpayment, and a determination was to be made as to whether his benefits were to be suspended effective April 2011 due to his incarceration. (*Id.*).

Plaintiff filed a civil action in this Court in November of 2014. On March 19, 2015, the Commissioner filed a *Motion to Remand to Commissioner of the Social Security Administration* for a reconsidered determination regarding the calculation of Plaintiff's child's insurance benefits based on the Appeal Council's 2011 decision. (Doc. No. 22). On April 14, 2015, this Court remanded the matter for further administrative action pursuant to sentence six of 42 U.S.C. § 405(g).

On May 16, 2015, the Social Security Administration ("Administration") issued a Notice of Reconsideration. (Doc. No. 37 at 215). The notice provided that Plaintiff was underpaid an amount of $5,695.80 for the period from January 1985 through April 2015. (*Id.* at 234). However, the underpayment could not be paid due to Plaintiff's incarceration, and Plaintiff was advised to contact the Administration when released. (*Id.* at 235). As to Plaintiff's argument that he was owed a larger underpayment because his mother filed for and was granted bankruptcy, the Administration noted as follows:

> Section 204 of the Social Security Act and implementing Regulations state that when an overpayment is not recovered from the overpaid person, the overpayment may be withheld from any other benefits payable on the same Social Security record. If a person is the representative payee for the beneficiary, the representative payee is personally liable for the overpaid funds as well as the beneficiary. Therefore, the overpayment may be recovered from the beneficiary or the representative payee. Both the beneficiary and the representative payee are liable for repayment of the overpayment.
>
> A Bankruptcy ruling applies only to the person who is the party to the Bankruptcy action. Any person who is considered by Social Security to be jointly liable for an overpayment is not covered by the Bankruptcy action.
>
> You stated that you should receive all of the benefits for May 2004 through March 2011 because your mother received all of your previous payments and not you. These payments are benefits for you and you are responsible for any benefits that are received either by you or by someone on your behalf. You have stated that the Bankruptcy filed by your mother allows you to be paid all of these back benefits. However, this is not the case. You were not the petitioner in the Bankruptcy Court action. Below are worksheets that show the disabled adult child payments for the beginning [of] January 1985 to the present.

4

(*Id.* at 217). The Administration further provided a table documenting the amounts Plaintiff was actually paid and the amounts he should have been paid from January 1985 through April 2015. (*Id.*). In total, Plaintiff was paid $132,489.30 and should have been paid $138, 185.10. (*Id.* at 234). As a result, Plaintiff was underpaid a total of $5,695.80 for the period of January 1985 through April 2015. (*Id.*).

In May of 2015, Plaintiff requested a hearing before an ALJ. (*Id.* at 237-38). A hearing was scheduled for April 27, 2016, before ALJ Denzel Busick. (*See Id*. at 281-86). ALJ Busick issued a partially favorable opinion on June 21, 2016, wherein he found Plaintiff was overpaid $32,532.00 during periods of incarceration where he was ineligible to receive benefits. (*Id.* at 10). ALJ Busick further determined that Plaintiff was underpaid benefits in the amount of $38,227.80 during his time housed at the North Dakota State Hospital throughout much of 2007 to 2011, as he was not "incarcerated" or "confined in a correctional institution" and so did not qualify for suspension of benefits. (*Id.* at 10-11). ALJ Busick also concluded that after offsetting the overpayment with the underpayment, Plaintiff was owed $5,695.80. (*Id.* at 11). Finally, Plaintiff argued the overpayment was discharged due to his mother declaring bankruptcy and he was entitled to the full underpayment amount. (*Id.*). However, ALJ Busick noted that as Plaintiff's mother was his representative payee, they shared joint and several liability for the overpayment debt, but because the underpayment encompassed the entire overpayment and left an underpayment balance, he would owe no additional funds. (*Id.*). Plaintiff did not file optional exceptions with the Appeals Council, nor did the Appeals Council assume jurisdiction. (*See* Doc. No. 41 at 5). Accordingly, the ALJ's decision became the final decision of the Commissioner. (*Id.*).

On January 14, 2025, Plaintiff filed a motion to reopen his case in this Court and the motion was denied. (Doc. Nos. 33-34). On May 30, 2025, the Commissioner filed a motion to reopen the

case as "[Plaintiff] has the right to review of the Commissioner's June 2016 decision on remand without the filing of a separate civil action." (Doc. No. 36 at 3-4). On June 23, 2025, the court granted the Commissioner's motion and ordered the parties to submit briefing. (Doc. No. 39). Plaintiff filed his brief on July 9, 2025, and the Commissioner's brief was filed on August 21, 2025. (Doc. Nos. 40-41).

## II. LEGAL STANDARD

The court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022).[1] "Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

## III. DISCUSSION

### A. Overpayment Obligation

Plaintiff first asserts he was relieved of any obligation for overpayments incurred during his incarceration. The Commissioner disagrees, contending Plaintiff was liable for overpayments.

---

[1] The court is cognizant of the fact Emerson was incorrectly labeled as a criminal case. It shall be cited to as filed with the noted error.

6

The Commissioner may collect the overpayment of benefits as specified under 42 U.S.C. § 404(a).

> With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A). Moreover, monthly benefits shall not be paid "to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual – (i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense," and "(iii) immediately upon completion of confinement as described in clause (i) pursuant to conviction of a criminal offense an element of which is sexual activity, is confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding." 42 U.S.C. § 402(x)(1)(A)(i),(iii).

Here, the record reflects Plaintiff was incarcerated for in excess of thirty continuous days during each period of incarceration and was thus ineligible to receive benefits during that time as dictated by 42 U.S.C. § 402(x)(1)(A)(i). However, the record also reveals that while Plaintiff was ineligible for benefits during his periods of incarceration, he was incorrectly paid benefits when benefits should have been suspended, and benefits were also inappropriately withheld during his civil commitment when he was entitled to them. Notably, the Appeals Council determined that Plaintiff did not meet the requirements for suspension of benefits under the sexually dangerous person provisions of 42 U.S.C. § 402(x)(1)(A)(iii) at the time of his 2004 commitment as a sexually

7

dangerous person because Plaintiff's underlying 2001 conviction[2] did not contain an element of sexual activity required for suspension of benefits. Because Plaintiff completed his sentence for the conviction of gross sexual imposition in 1998 and was not immediately confined at the State hospital upon completion of that sentence, but was confined to the State hospital upon completion of a prison sentence for non-sexual offenses, Plaintiff did not qualify for suspension of benefits upon his transition from incarceration to the North Dakota State Hospital from 2004 through 2011, or since late 2015. (Doc. No. 37 at 10, 144).

Plaintiff incurred an overpayment of $32,532.00 from January 1984 through December 2015. (*See* Doc. No. 37 at 10). The regulations define an overpayment as follows:

> An overpayment includes a payment in excess of the amount due under Title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits, a payment in an amount in excess of the amount to which the individual is entitled, a payment resulting from the failure to terminate benefits, and a payment where no amount is payable.

(Doc. No. 37 at 9); *see also* 20 C.F.R. § 404.501(a). Plaintiff incurred an overpayment after receiving benefits during his incarceration when benefits should have been suspended. Pursuant to 42 U.S.C. § 404(a)(1)(A), as an overpaid person, the Administration was permitted to decrease any payment to which Plaintiff was entitled or require Plaintiff to refund the amount in excess of the correct amount. However, because benefits were to be withheld while Plaintiff was incarcerated subject to 42 U.S.C. § 402(x)(1)(A)(i), but were not, and benefits were withheld during his confinement to the North Dakota State Hospital when they should not have been, after calculating the amount underpaid with the amount overpaid, the underpayment encompassed or offset the entire overpayment, resulting in Plaintiff owing no additional money to the Administration and leaving an underpayment balance of $5,695.80.

---

[2] Plaintiff was incarcerated from 2001 through 2004 for convictions on charges of possession of stolen property and assault. (*See* Doc. No. 37 at 144).

B. **Bankruptcy Discharge**

Plaintiff next argues that because his mother declared bankruptcy, the overpayment was discharged, leaving him entitled to the entire underpayment. The Commissioner maintains that Plaintiff is not entitled to the entire underpayment as the bankruptcy discharge did not extinguish his obligation to repay the overpayments.

Under the Bankruptcy Code, a discharge:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor….

11 U.S.C. § 524(a)(1)-(3). The Bankruptcy Code further provides that "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The Administration's Program Operations Manual ("POMS") further dictates joint and several liability for overpayment recovery. Joint and several liability is defined as "the equal responsibility (shared liability) for repayment of an overpayment by two or more people." POMS GN 02205.007(A). Joint and several liability is presumed when making an overpayment determination. POMS GN 02205.007(D). In situations where a debtor who filed for bankruptcy is a representative payee, collection activity for the debtor's personal debts is halted, but continues for the beneficiary who did not file for bankruptcy. POMS GN 02215.185(E). When a debtor who is jointly liable for an overpayment files for bankruptcy, collection activity is not stopped for any other jointly liable individual or from those who have not filed for bankruptcy. (*Id.*). This is further

9

supported by regulations on liability for Title II overpayment recovery, wherein "[s]ection 204(a) of the Social Security Act provides that an overpaid person (whether or not he or she still received benefits), his or her representative payee, and any other person receiving benefits on the overpaid person's earnings record are liable (responsible) for repayment of an overpayment." POMS GN 02205.001(A).

This is a situation where Plaintiff and his mother, acting as Plaintiff's representative payee, were jointly and severally liable for the overpayment amount.[3] While Plaintiff's mother did receive a bankruptcy discharge, Plaintiff remains obligated to repay the overpayments as he was not a debtor in the bankruptcy action. (*See* Doc. No. 37 at 150) ("Linda [S.] is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)."). As previously noted, although Plaintiff's representative payee, his mother, filed for and was granted a bankruptcy discharge, under the applicable regulations, Plaintiff's responsibility was not halted as he did not file for bankruptcy, and he remained liable for the overpayments.

To the extent Plaintiff also argues the Administration was paid twice for the same overpayment, once by his mother and once by himself, the record does not support such an assertion. The record provides that in early 2011, Linda S. notified the Administration that she was filing for bankruptcy. (Doc. No. 37 at 175). Later that same year, the Administration notified Linda S. that she was no longer liable for Plaintiff's overpayment of $67,102.00 as it had been recovered by Plaintiff, and she was due an underpayment of $459.00. (*Id.*). Linda S.'s debt was discharged through the bankruptcy proceeding sometime thereafter. (*Id.* at 176). Consequently, the

---

[3] The Court notes that the Administration identifies Linda S. as a contingently liable beneficiary. (*See* Doc. No. 37 at 172). "Any person receiving benefits on the same earnings record as the overpaid person is contingently liable for recovery of the overpayment. Contingent liability is imposing the responsibility for repayment of an overpayment on another person entitled on the same record when we are unable to recover from the primarily responsible person(s)." POMS GN 02205.005(A). Here, while Linda S. is contingently liable as both she and Plaintiff were receiving benefits on the same earnings record, she also acted as Plaintiff's representative payee, which opens the door for joint and several liability.

Administration did not collect the same overpayment twice, and Plaintiff remained liable for the overpayments collected by the Administration.

### C. Owed Benefits

Finally, Plaintiff contends he is owed full benefits from 2004 until 2011, plus interest and taxes. Plaintiff specifically alleges he is owed $72,964.00, the $67,102.00 overpayment plus the $5,694 underpayment, plus taxes and interest for a total of $85,000. He also requests "three times the amount accidently to law." (*See* Doc. No. 40 at 1).

Plaintiff does not cite any authority which authorizes the payment of interest and taxes on his requested payment. Moreover, although Plaintiff asserts he is entitled to $85,000, he does not provide argument as to how or why the Administration's month-by-month comparison of the amounts paid versus the amounts owed were incorrect, beyond his allegation that a "Representative Mary" told him he was entitled to payments. (*See* Doc. No. 40 at 1). In calculating Plaintiff's overpayment amount, the Administration documented the amount Plaintiff was actually paid and the amounts Plaintiff should have been paid per month from January 1985 through April 2015. (*See* Doc. No. 37 at 217-34). The Plaintiff does not put forth any evidence that the Administration erred in its calculation and the Court is not inclined to make such a finding.

It is also worth noting that although Plaintiff argues the Administration was given permission to take his benefits to pay back overpayments, the focus of the proceedings was on whether Plaintiff was entitled to benefits during his time incarcerated and civilly committed, not on the issue of bankruptcy. As noted in its decision, "[t]he issue before the Appeals Council is whether the claimant is not eligible for payments beginning April 2004 based on the sexually dangerous inmate provisions of Section 202(x)(1)(A)(iii) of the Act (42 U.S.C. § 402(x)(1)(A)(iii))." (Doc. No. 37 at 142). This was further reiterated in ALJ Busick's 2016

11

decision. (*See Id.* at 9) ("The issue is whether the claimant has been overpaid or underpaid benefits under section 204(A)(1)(A) of the Social Security Act (Act)."). ALJ Busick found that because Plaintiff was erroneously paid benefits when they should have been suspended, and benefits were withheld when he was eligible to receive them, after offsetting the overpayments and underpayments, Plaintiff was entitled to an underpayment of $5,695.80. (*Id.* at 11). As a final note, ALJ Busick did not find the overpayment was discharged because while Plaintiff and his mother had joint and several liability for the overpayment debt prior to his mother's bankruptcy discharge, Plaintiff continued to have liability for the overpayment amount, and at no time was there information provided that indicated a discharge of Plaintiff's debts occurred at the time of his mother's discharge or at any other date since then. (*Id.*). Accordingly, while Plaintiff is entitled to the $5,695.80 underpayment, he is not entitled to "full benefits" from 2004 through 2011 or interest and taxes on said benefits.

## IV.    CONCLUSION

For the reasons articulated above, Plaintiff's *Motion for Requested Relief* (Doc. No. 42) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 5th day of November, 2025.

> */s/ Clare R. Hochhalter*
> Clare R. Hochhalter, Magistrate Judge
> United States District Court